UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES**, <br><br>　　　　　Plaintiff, <br><br>v. <br><br>**JAMES WILLIAMS**, <br><br>　　　　　Defendants. | 2:18-CR-20547-TGB-DRG <br><br> HON. TERRENCE G. BERG <br><br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** <br> **(ECF NO. 28)** |

　　James Williams was hired to kill two people in two separate murder-for-hire plots. The first murder was accomplished. While attempting the second, William and his co-conspirators shot the wrong man. Williams was charged with two counts of using facilities of interstate commerce to commit murder-for-hire. He was further charged with two counts of conspiracy to commit the same crime.

　　Williams now moves to dismiss all four charges. He argues that Title 18 U.S.C. § 1958 is unconstitutional as applied to him, because it stretches beyond Congress's power to regulate interstate commerce. But extensive and unambiguous Sixth Circuit and Supreme Court precedent forecloses his argument. So Williams's motion to dismiss will be denied.

## I. BACKGROUND

　　The facts set forth below are drawn from the allegations in the government's brief. They are not findings of fact by the Court and stating

them in this Order does not suggest that Williams is not presumed innocent. In order to address the legal arguments presented in this motion, the Court must accept the allegations against Williams as true. *United States v. Hill*, Case No. 11-20100, 2011 WL 3320490, at *1 (E.D. Mich. Aug. 2, 2011).

The government alleges that in 2016, Williams was hired to murder two people. In the first plot, Williams drove with a coconspirator to a nightclub where the first victim was and waited outside. The pair then followed the victim to his home and the coconspirator shot him.

In the second conspiracy, Williams subcontracted the murder-for-hire to a coconspirator. That coconspirator then recruited a third coconspirator. All three communicated by cell phone. Williams picked up both coconspirators, and drove them to a barbershop where the trio thought they would find their target.

As it turns out, they were at the wrong barbershop. An entirely unrelated person exited the barbershop and walked to his car. Believing this person *was* their target, the coconspirators shot him several times. The coconspirators then fled in Williams's car. The victim survived the shooting.

Williams does not dispute that he and his coconspirators used cell phones and cars to arrange and execute both murders-for-hire.

## II. ANALYSIS

Williams was charged under 18 U.S.C. § 1958 with two counts of Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire, and two counts of conspiracy to commit the same crime. 18 U.S.C. § 1958 provides as follows:

> (a) Whoever . . . uses or causes another (including the intended victim) to use the mail or any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value, or who conspires to do so, shall be fined under this title or imprisoned…
> (b) As used in this section and section 1959—
> …
> (2) "facility of interstate or foreign commerce" includes means of transportation and communication[.]

The indictment charges that Williams "used and caused another to use a facility of interstate or foreign commerce, to wit: telephone(s) and motor vehicle(s)" with the intent that a murder be committed. *See* Super. Ind., ECF No. 14, PageID.39.

Williams argues that his conduct was purely intrastate, and that no connection to interstate commerce has been alleged. He argues that § 1958 is unconstitutional as applied to the facts in the indictment, because it allows federal prosecution to reach into an area of traditional state concern: the prosecution of a purely local murder.

Williams acknowledges that that § 1958 prohibits the use of a facility of interstate commerce to commit murder. He also acknowledges

3

that 1958(b)(2) defines a "facility of interstate commerce" as "means of transportation and communication." But he argues that these terms are unconstitutionally vague and ambiguous.

If these terms are vague, Williams argues that the Court must turn to principles of federalism to construe their meaning. He argues that murder is a purely local crime, traditionally a matter of state, not federal, concern. While Williams admits that he used cars and cell phones to commit his alleged murders-for-hire, he points out that he never traveled across state lines in doing so, and that his violence was a purely intrastate endeavor that did not affect interstate commerce in any way. He appears to argue that phones and cars are not instrumentalities of interstate commerce unless they are actually *used in* interstate commerce. Def's. Mot., ECF No. 28, PageID.100.

Williams cites a raft of Supreme Court precedent[1] for the proposition that a Court may turn to "basic principles of federalism . . . to resolve ambiguity in federal statutes." *Bond v. United States*, 572 U.S. 844, 845 (2014). Invoking those principles of federalism, federal courts have taken caution not to upset the traditional balance between federal and state law enforcement when interpreting statutes. Courts should avoid reading federal statutes to intrude on the traditional power of states to police purely local crime.

---

[1] *United States v. Lopez*, 514 U.S. 549 (1995); *United States v. Morrison*, 529 U.S. 598 (2000); *Jones v. United States*, 529 U.S. 848 (2000).

While these general principles are correct, Williams fails to note that the very question raised by this motion has been answered by the Supreme Court and the Sixth Circuit.

### A. No "substantial effect" on interstate commerce is required when Congress regulates the instrumentalities or channels of interstate commerce

In citing to *Bond*, *Lopez*, *Morrison* and *Jones*, Williams takes no account of the fact that those cases arose in contexts entirely different from the situation presented in this case. In *Lopez*, the Court discussed three categories of activity that Congress may regulate under the Commerce Clause:

> First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce.

*Lopez*, 514 U.S. at 558-59 (citations omitted).

Williams is correct that, when considering a regulation that falls into the third category, the regulated conduct must have a "substantial effect" on interstate commerce. That is the category addressed in *Bond*, *Lopez*, *Morrison* and *Jones*. And it is the category where Congress's power

to regulate interstate commerce is at its lowest ebb—as those cases demonstrate.

But unlike the statutes discussed in *Bond*, *Lopez*, *Morrison*, and *Jones*, § 1958 does not rely on Congress's third-category power "to regulate those activities having a substantial relation to interstate commerce." Rather, Congress exercised the second category of power when it enacted § 1958: the authority to regulate the *instrumentalities* of interstate commerce. And when Congress regulates instrumentalities of interstate commerce, a "showing that a regulated activity substantially affects interstate commerce . . . is not needed." *United States v. Gil*, 297 F.3d 93, 100 (2d Cir. 2002); *United States v. Richeson*, 338 F.3d 653, 660 (7th Cir. 2003).

Courts have upheld similar statutes against this type of challenge. For example, Judge Duffy of the Northern District of Georgia addressed a similar attack on 18 U.S.C. § 1201(a)—criminalizing the use of instrumentalities of interstate commerce to facilitate a kidnapping—and explained why Williams's arguments are wrong. *United States v. Graves*, Case No. 13-00417, 2014 WL 2589428, at *7 (N.D. Ga. June 9, 2014). In *Graves*, a defendant charged under § 1201 relied on *Jones*, *Morrison*, and *Lopez* to argue that an intrastate kidnapping fell outside Congress's authority to regulate interstate commerce. But as the *Graves* court explained, none of those cases "purport to restrict Congress' ability to regulate the use of channels and instrumentalities of interstate

6

commerce." *Id.* So too here. Congress has the power to regulate instrumentalities of interstate commerce, even when used purely interstate.

Closer to home, a recent opinion by the Honorable Paul D. Borman of this district confirms the same understanding of 18. U.S.C. § 1958. See *United States v. Michael Davis et al.*, Case No. 18-20085, ECF No. 244 (E.D. Mich. Jun. 19, 2020). There, a defendant charged with using cell phones and cars during a murder-for-hire made the same argument that Williams now raises.[2] Judge Borman rejected those arguments, explaining that Congress may regulate the channels of interstate commerce even when only intrastate activity is alleged. *Id.* at PageID.1055.

### B. Cell phones and cars are instrumentalities of interstate commerce

The power of Congress to regulate the channels and instrumentalities of interstate commerce is distinct and independent from Congress's power to regulate general conduct and activities that have a substantial impact on interstate commerce. Thus, when a person uses those channels or instrumentalities of interstate commerce, their use may be regulated by Congress whether or not the specific use has a

---

[2] Indeed, at oral argument Williams' counsel acknowledged that his arguments were similar to and largely borrowed from those advanced by the defendants in *Davis*. Counsel noted that he filed this motion to preserve the argument for Williams in the event that *Davis* were reversed on appeal.

7

substantial impact on interstate commerce in that individual case. In the Supreme Court's three-level conceptualization of Congressional power set out in *Lopez*, it is the interstate nature of the channel or the instrumentality itself, not the kind of use a person puts that channel or instrumentality to, that gives Congress its power.

To avoid that unambiguous conclusion of the Supreme Court, Williams appears to argue that cell phones and automobiles are not instrumentalities of interstate commerce *unless* they are actually used interstate. But the Sixth Circuit has roundly rejected that interpretation of § 1958. In case after case, the Sixth Circuit and other courts of appeal have held that cell phones *are* instrumentalities of interstate commerce, even when they are used exclusively intrastate.

In *United States v. McHenry*, 97 F.3d 125, 127 (6th Cir. 1996), the Sixth Circuit held that Congress's "category two" power to regulate instrumentalities of interstate commerce did not depend on that instrumentality being "actually engaged in interstate commerce." Other circuits are in accord. In *United States v. Mandel*, 647 F.3d 710, 722-23 (7th Cir. 2011), the Seventh Circuit explained that it was not plain error to conclude that a car was an instrumentality of interstate commerce even when it did not cross state lines during the commission of a crime. *See also United States v. Dvorkin*, 799 F.3d 867, 874 n.15 (7th Cir. 2015). The Fourth Circuit held similarly when considering a different statute: "[c]ars, like trains and aircraft, are both inherently mobile and

indispensable to the interstate movement of persons and goods," even if their use is entirely intrastate. *United States v. Cobb*, 144 F.3d 319, 322 (4th Cir. 1998).

The same analysis has been applied to cell phones. In *United States v. Weathers*, 169 F.3d 336, 340 (6th Cir. 1999), the Sixth Circuit addressed this question for the first time. The *Weathers* court explained that it was "well established that telephones, even when used intrastate, constitute instrumentalities of interstate commerce."[3] *Id.* at 341. And just last year the Sixth Circuit addressed a similar statute that criminalizes the use of "any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission" of a kidnapping. *See* 18 U.S.C. 1201(a)(1). There, even though a car and cell phone had been used exclusively within the boundaries of one state, the court of appeals found that the "use of an interstate instrumentality" element was met. *United States v. Windham*, 53 F.4th 1006, 1011-13 (6th Cir. 2022) ("In what appears to be a question of first impression for this Court, the Court finds that Windham's

---

[3] At the time of the Weathers decision, § 1958 spoke of facilities *in* interstate commerce. Although the Weathers court recognized that cell phones are instrumentalities *of* interstate commerce, the court explicitly did not reach the issue of whether a cell phone must be used interstate to qualify as an instrumentality *in* interstate commerce. However, § 1958 was amended in 2004, and now requires that a defendant use a facility *of* interstate commerce. That amendment obviates the Weathers court's concern.

9

intrastate use of a cell phone and automobile satisfies § 1201(a)(1)'s interstate commerce requirements"). And other courts of appeal follow the same rule. *See, e.g.*, *Richeson*, 338 F.3d at 660 (intrastate use of cell phone satisfied § 1958).

Williams argues that neither *Weathers* nor *Windham* addressed "whether the murder-for-hire statute as alleged in the Superseding Indictment is unconstitutional as applied in light of principles of federalism and other principles of construction," and neither case examined "whether the Commerce Clause supports extension of federal authority to prosecute serious local crime, here, murder, based only on the extension of federal jurisdiction through intrastate use of a cell phone or an automobile." Repl., ECF No. 33, PageID.140.

But Williams overlooks another recent Sixth Circuit case this issue: *United States v. Watson*, 852 F. App'x 164, 168 (6th Cir.), cert. denied, 141 S. Ct. 2614 (2021). There, a defendant convicted under § 1958 made the same exact argument: that "a cell phone cannot be included as an instrumentality of interstate commerce because 'the risks of globally expansive federal jurisdiction' due to the 'ubiquitous nature' of cell phones 'may warp traditional notions of American federalism.'" That argument failed to persuade the Sixth Circuit. *Id.*

This Court is bound by the holdings of the Sixth Circuit and the Supreme Court. And further, the reasoning of the above-cited Supreme Court and Sixth Circuit precedents and the instructive opinions from

10

other Courts of Appeal is persuasive. Those cases make it clear that no direct interstate activity need be shown when Congress regulates the instrumentalities of interstate commerce.

### C. In any event, the cell phones at issue sent signals across state lines

As discussed above, the power of Congress to regulate instrumentalities of interstate commerce does not depend on whether a person crosses state lines in employing that interstate instrumentality or remains only within the boundaries of a single state. But as the government points out, a cell phone—by its very nature—almost always affects interstate commerce by causing signals to cross state lines. Cell phones often connect to out-of-state switching centers to connect and route even purely local calls.

Here, Williams does not dispute that all of the relevant switching centers through which his calls were routed were outside of Michigan. In the Sixth Circuit, that is enough to establish that a facility of interstate commerce was used. *Weathers*, 169 F.3d at 342. Other circuits have reached the same conclusion. *See, e.g*, *United States v. Drury*, 396 F.3d 1303, 1312-13 (11th Cir. 2005) (use of a cell phone which sent signals across state lines was sufficient to sustain a conviction under § 1958(a)). Williams' only response is to argue that, under that theory, the use of a cell phone would always involve interstate commerce. But that argument assumes the conclusion that Congress is not permitted to regulate the

11

instrumentalities of interstate commerce even when they are used to commit crimes that have traditionally been considered a local concern. And for all the reasons explained above, Congress does have that power. Other than raising policy concerns about the unjustified expansion of federal jurisdiction, Williams points to no authority supporting the proposition that such an extension is unconstitutional. Indeed, he cannot do so, because binding appellate and Supreme Court precedent is against him.

### III. CONCLUSION

The Sixth Circuit and other courts of appeal have repeatedly held that cars and cell phones are instrumentalities of interstate commerce. And they have further held that proof that a defendant used cell phones and cars to commit a murder-for-hire is enough to sustain a conviction under § 1958 even when those instrumentalities are not used in interstate commerce. Accordingly, Williams' motion is **DENIED**.

**IT IS SO ORDERED.**

DATED: July 5, 2023

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT COURT